IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| SAMANTHA F. HENNING, | ) CASE NO. 3:11 CV 2573 |
| ) | |
| Plaintiff, | ) |
| ) | MAGISTRATE JUDGE |
| v. | ) WILLIAM H. BAUGHMAN, JR. |
| ) | |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) **MEMORANDUM OPINION AND** |
| ) | **ORDER** |
| Defendant. | ) |

## Introduction

Before me[1] is an action under 42 U.S.C. §405(g) and §1383 by plaintiff Samantha F. Henning seeking judicial review of the final decision of the Commissioner of Social Security denying her application[2] for children's supplemental security income.[3] The Commissioner has filed an answer[4] and the transcript of the administrative proceedings.[5] Pursuant to my

---

[1] The parties consented to my exercise of jurisdiction. ECF # 15.

[2] Henning was an adolescent at the time of the original application and decision of the Administrative Law Judge, but is now an adult and appealing on her own behalf. *See*, ECF # 18 at 2 n.1.

[3] ECF # 1.

[4] ECF # 10.

[5] ECF # 11.

initial order[6] and procedural order,[7] the parties have briefed their positions[8] and filed supporting charts[9] and the fact sheet.[10] The parties participated in a telephonic oral argument.[11]

For the reasons set forth below, I will find that the decision of the Commissioner is not supported by substantial evidence and will therefore be reversed, with the matter remanded for further proceedings.

## Facts

### A. Decision of the Administrative Law Judge ("ALJ")

Henning was born in 1991, making her, as noted earlier, an adolescent at the time of the administrative hearing.[12]

The ALJ, whose decision became the final decision of the Commissioner, found that Henning had severe impairments consisting of attention deficit hyperactivity disorder

---

[6] ECF # 4.

[7] ECF # 17.

[8] ECF # 18 (Henning's brief); ECF # 23 (Commissioner's brief).

[9] ECF # 18, Attachment 1 (Henning's chart); ECF # 23, Attachment 1 (Commissioner's chart).

[10] ECF # 16 (Henning's fact sheet).

[11] ECF #s 25, 26.

[12] Transcript ("Tr.") at 21.

("ADHD"), conduct disorder/oppositional defiant disorder ("ODD"), and asthma.[13] The ALJ then decided that these impairments did not meet, equal, or functionally equal any listing in the regulations.[14] In that regard, the ALJ concluded that Henning's impairments produced either no limitation or less than marked limitations in all six domains of function.[15] After concluding that positive effects from medication and her "demonstrated ability" to function socially and academically made Henning's testimony not fully credible as to any limiting effects of her impairments, the ALJ finally concluded that Henning did was not disabled.[16]

**B.     Issues on administrative review**

Henning asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Henning raises the following two issues in her brief:

- Whether the administrative law judge's finding that the child Samantha Henning did not have an impairment that functionally equaled a listing is supported by substantial evidence where Ms. Henning's oppositional defiance disorder (conduct disorder) and attention deficit disorder have led to an extreme limitation in her ability to interact and relate with others, such extreme limitation is supported by the opinion of the consultative examiner who found her behavior ½ age appropriate, and supported by school records documenting multiple suspensions and expulsions for behavioral problems?

---

[13] *Id.*

[14] *Id.* at 22-23.

[15] *Id.* at 23-25.

[16] *Id.* at 26.

- Whether the administrative law judge erred in finding that Ms. Henning did not have an impairment that functionally equaled a listing where the administrative law judge predicated his decision on the belief that Ms. Henning's condition was improved with medication, but the record supports only that Ms. Henning's attention was improved with medication and the administrative law judge provided no analysis as to whether Ms. Henning's compliance with medication was a failure to follow prescribed treatment?[17]

That said, however, Henning in her brief[18] and at the oral argument[19] asserts that the essential issue raised here is the narrow question of whether the ALJ erred in finding that Henning had less than marked limitations in the domain of interacting and relating to others and that the proper finding in this domain should be an extreme limitation.

## Analysis

### A.  Standard of review – substantial evidence

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by

---

[17] ECF # 18 at 2.

[18] *Id.* at 11(conclusion). "The record overwhelmingly documents an extreme limitation in Ms. Henning's ability to relate and interact with others, as documented in school records and the opinion of the reviewing State agency psychologist. There is no substantial evidence to the contrary."

[19] ECF # 26 (transcript of oral argument held on Dec. 12, 2012) at 4.

> this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.  Application of standard – substantial evidence does not support the ALJ's decision that Henning has less than marked limitations in the domain of relating and interacting with others.**

This case, as noted, involves a very focused, narrow challenge to a denial of a child's supplemental security income application. The ALJ, as more fully discussed above, found that for the six domains, the level of impairment in none exceeded less than marked. Henning argues here that the finding for the "interacting and relating with others" domain is not

---

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

supported by substantial evidence and submits that substantial evidence exists that would support a finding of an extreme limitation in that domain.

The critical evidence in this regard consists of a consulting examination and evaluation done by Mark Hammerly, Ph.D., a psychologist, in March of 2006,[23] and the April, 2006, opinion of the state agency reviewing physician, Malika Hague, M.D.[24] Although the ALJ discusses these evaluations/opinions in some detail within the context of an evaluation of the evidence relating to this domain,[25] he explicitly makes no assignment of weight to either. As the Commissioner concedes, however, because the ALJ's findings for the six domains are consistent with the opinion of Dr. Hague, it is clear that the ALJ implicitly gave great weight to that opinion.[26]

In that analysis for this domain, the ALJ found that, although Henning's ability to communicate falls within the normal range, "she has experienced difficulty regarding appropriate behavior."[27] To that point, the ALJ cited her behavior records from the school that showed she "was frequently suspended for violent or antisocial behavior" such as making threats to others, using profanity, striking others and disobedience toward teachers.[28]

---

[23] Tr. at 156-61.

[24] *Id*. at 164-69.

[25] *Id*. at 24.

[26] ECF # 26 at 10.

[27] Tr. at 24.

[28] *Id.*

But notwithstanding this finding, the ALJ concluded from the records of Dr. Hammerly and Nancy Pain, a treating behavioral counselor, that medication "was effective" in controlling this inappropriate behavior.[29] Further, the ALJ characterized Dr. Hammerly's opinion as being that Henning's beligerence was a "choice," meaning that her social limitation was less than marked;[30] an opinion the ALJ indicated was shared by Dr. Hague.[31]

Henning's arguments to the contrary are three-fold. First, the ALJ improperly evaluated Dr. Hammerly's comments.[32] Henning contends that Dr. Hammerly acknowledged the seriousness of her ODD impairment, characterized her behavior as socially unacceptable, and then gave her a low GAF, noting that "[t]his child shows relatively serious symptoms today, including behavior that is completely unacceptable in any setting."[33] Thus, while the ALJ correctly noted that Dr. Hammerly "condemned" Henning's behavior of "considering fights as a form of entertainment," Henning argues that he incorrectly saw that comment as a statement that this conduct was a choice.[34]

---

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] ECF # 18 at 7.

[33] Tr. at 161.

[34] ECF # 18 at 7-8.

Second, although the record shows that she was not incompliant with Adderall, the Adderall was prescribed for her ADHD not her ODD, and merely helped her focus without having an effect on behavior.[35]

Third, under the rulings and regulations, the ALJ inadequately evaluated the issue of noncompliance with medication.[36]

The Commissioner counters that the record contains substantial evidence in support of the less-than-marked finding in the relevant domain. As to the disruptive behavior being a choice, the Commissioner observes that on multiple occasions Henning was able to be "nice" in certain circumstances, such as in the interviews with Dr. Hammerly and Nancy Pain, and when she babysat for her aunt.[37] Further, the Commissioner maintains that the record does contain evidence that Adderall did have a beneficial effect on Henning's behavior.[38] Finally, the Commissioner asserts that the ALJ properly located and articulated the reasons why Henning elected not to take her medication.

In reviewing the opinion of Dr. Hammerly, I am initially struck by the first sentence in the conclusion of his report – "This is a very difficult case."[39] Frankly, both Henning and the Commissioner have sought to paint with stark colors a report that is genuinely rendered

---

[35] *Id.* at 8.

[36] *Id.* at 9.

[37] ECF # 23 at 7.

[38] *Id.* at 7-8.

[39] Tr. at 160.

with considerable nuance and precision. A fair reading of this report is that Dr. Hammerly saw evidence of "a very intelligent girl [who] did not display interpersonal problems during the interview," and yet whose belligerence was well-documented and "appears to be her default response in almost every situation."[40] Dr. Hammerly called for additional testing by a future, treating clinician to "look for something" to "explain her behavior."[41]

Still, that said, Dr. Hammerly's final conclusion was that Henning has "conduct disorder, adolescent-onset type ADHD, hyperactive/impulsive type."[42] He was clear that she is "functioning at only 1/2 age-level," and this low level of functioning was the only reason why an otherwise intelligent girl with good communication skills was "wandering around schools and neighborhoods looking for someone to fight for entertainment."[43]

Thus, properly understood in context, Dr. Hammerly's observations do not support the somewhat simplistic view that Henning's fighting was merely an elective decision, an entertainment choice among other options. Rather, Dr. Hammerly was careful to note that, while he had no good clinical explanation as to why Henning could be both "nice" and belligerent, he must nonetheless conclude that Henning currently has "severe symptoms" of conduct disorder such that her "[f]unctioning must be rated between 41 and 50."[44]

---

[40] *Id*.

[41] *Id*. at 160-61.

[42] *Id*. at 161.

[43] *Id*.

[44] *Id*. at 161.

In addition, I am also troubled by the fact that Dr. Hague – whose opinion the ALJ clearly, but only implicitly, gives great weight to – does not clearly indicate that her opinion is based on a review of Dr. Hammerly's report of a month before. And further, the ALJ here does not discuss the foundation of Dr. Hague's opinion, since the ALJ made no explicit, on the record assessment as to the weight to be given to that opinion. As the Sixth Circuit explained in *Stacey v. Commissioner of Social Security*,[45] where the ALJ gives no indication that he is aware that a reviewing source may not even have considered the opinion of a treating source, and this occurs in the context of the reviewing source being implicitly given the greatest weight, there are too many unanswered questions for a reviewing court to affirm the ALJ's decision and the matter must be remanded.[46]

On remand, if the opinion of Dr. Hague is to be given significant weight as to the degree of any limitations in this domain, the appropriate discussion of the reasons for that conclusion must appear on the record, with particular attention being given to whether or not Dr. Hague's opinion is based on a review of Dr. Hammerly's report, which, as that of an examining source, would otherwise be entitled to more weight than that of a reviewing source.[47] And, should a discussion of Dr. Hammerly's opinion itself be needed, such a discussion should fairly account for the complexity and nuance in that report.

---

[45] *Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517 (6th Cir. 2011).

[46] *Id.* at 520 (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 408-09 (6th Cir. 2009)).

[47] *Lyons v. Soc. Sec. Admin.*, 19 F. App'x 294, 302, 2001 WL 11101110 (6th Cir. 2001).

## Conclusion

Substantial evidence does not support the finding of the Commissioner that Henning had no disability. Accordingly, the decision of the Commissioner denying Henning children's supplemental security income is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: March 28, 2013                           s/ William H. Baughman, Jr.
                                                          United States Magistrate Judge